WRIGHT, FINLAY & ZAK, LLP
Robin Prema Wright, Esq., State Bar No. 150984
T. Robert Finlay, Esq., State Bar No. 167280
4665 MacArthur Court, Suite 280
Newport Beach, CA 92660 *(Costales/Pleadings/Notice of Motion to Dismiss Plaintiff's Complaint)*
Tel. (949) 477-5050; Fax (949) 477-9200
rfinlay@wrightlegal.net

Attorneys for Defendant, SPECIALIZED LOAN SERVICING, LLC
(erroneously sued herein as SPECIALIZED LOAN SERVICES)

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTRELLA COSTALES,<br><br>                      Plaintiff,<br><br>     vs.<br><br>AMERICA'S SERVICING CO.,<br>LOAN CENTER OF CALIFORNIA,<br>INC., AND SPECIALIZED LOAN<br>SERVICES,<br><br>                      Defendants. | Case No.: 08 CV 1079-L (JMA)<br><br>**AMENDED NOTICE OF MOTION AND MOTION OF DEFENDANT, SPECIALIZED LOAN SERVICING, LLC, TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO F.R.C.P. 12(b)(6)**<br><br>Date:  October 14 , 2008<br>Time:  10:30 a.m.<br>Dept.:  14<br><br>*[Filed concurrently with Memorandum of Points and Authorities and Request for Judicial Notice]*<br><br>Complaint Filed: June 18, 2008 |

**TO ALL PARTIES HEREIN AND THEIR COUNSEL OF RECORD, IF ANY:**

NOTICE IS HEREBY GIVEN that on October 14, 2008, at 10:30 a.m., or as soon thereafter as the matter may be heard in the Courtroom 14 of the United

1

1  District Court for the Southern District of California, located at 880 Front Street,

2  #4290, San Diego, California, 92101, Defendant SPECIALIZED LOAN

3  SERVICING, LLC (erroneously sued herein as SPECIALIZED LOAN

4  SERVICES), (hereinafter "SLS"), will and hereby does move the court pursuant to

5  *Fed. Rules of Civ. Proc.* 12(b)(6) for an order dismissing all claims for relief

6  against it in the Complaint of Plaintiff ESTRELLA COSTALES ("Plaintiff" or

7  "Costales").

8      This motion is based on this Notice, the Memorandum of Points and

9  Authorities and Request for Judicial Notice filed and served concurrently herewith,

10  and on any other materials on file as the court may consider at the time of hearing

11  on this motion.

12                                     Respectfully submitted,

13                                   WRIGHT, FINLAY & ZAK, LLP

14

15  Dated: July 21, 2008       By: _____

16                                   Robin Prema Wright, Esq.

17                                   T. Robert Finlay, Esq.,

18                                   Attorneys for Defendant SPECIALIZED
                                 LOAN SERVICING, LLC (erroneously

19                                   sued herein as SPECIALIZED LOAN

20                                   SERVICES)

21

22

23

24

25

26

27

28

1

## PROOF OF SERVICE

2

3    I, Nancy C. Wheeler, declare as follows: I am employed in the County of
Orange, State of California. I am over the age of eighteen (18) and not a party to
4    the within action. My business address is 4665 MacArthur Court, Suite 280,
Newport Beach, California 92660. I am readily familiar with the practices of
5    Wright, Finlay & Zak, LLP, for collection and processing of correspondence for
6    mailing with the United States Postal Service. Such correspondence is deposited
7    with the United States Postal Service the same day in the ordinary course of
business.

8

9    On July 22, 2008, I served the within, **AMENDED NOTICE OF
MOTION AND MOTION OF DEFENDANT, SPECIALIZED LOAN
10    SERVICING, LLC, TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT
11    TO F.R.C.P. 12(b)(6)** on all interested parties in this action as follows:

12

13    [X]    by placing [ ] the original [X] a true copy thereof enclosed in sealed
envelopes addressed as follows:

14

15    ## SEE SERVICE LIST

16    [ X ]    (BY MAIL SERVICE) I placed such envelope(s) for collection to be
17    mailed on this date following ordinary business practices.

18    [  ]    (BY FACSIMILE) The facsimile machine I used, with telephone no. (949)
477-9200, complied with California Rules of Court, Rule 2003, and no
19    error was reported by the machine.

20    [  ]    By Personal Service, by delivering same to First Legal Support Services for
21    personal service

22    [ X ]    (BY FEDERAL EXPRESS - NEXT DAY DELIVERY) I placed true and
correct copies of thereof enclosed in a package designated by Federal
23    Express with the delivery fees provided for.

24    [ X ]    (State) I declare under penalty of perjury under the laws of the State of
25    California that the foregoing is true and correct.

26    Executed on July 22, 2008, at Newport Beach, California.

27

28    Nancy C. Wheeler

1
PROOF OF SERVICE

1

## SERVICE LIST

2

3   Estrella Costales
4   12796 Isocoma Street
    San Diego, CA 92129
5   **Plaintiff pro se**
6

7   Suzanne M. Hankins
    Jarlath M. Curran, II
8   SEVERSON & WERSON
9   A Professional Corporation
    The Atrium
10  19100 Von Karman Ave., Suite 700
11  Irvine, CA 92612
12  Telephone (949) 442-7110
    Facsimile (949) 442-7118
13  **Attorneys for Defendant**
14  **WELLS FARGO BANK, N.A., dba**
    **AMERICA'S SERVICING COMPANY**
15

16  Mark D. Lonergan
17  SEVERSON & WERSON
    A Professional Corporation
18  One Embarcadero Center, Suite 2600
19  San Francisco, CA 94111
    Telephone (415) 398-3344
20  Facsimile (415) 956-0439
21  **Attorneys for Defendant**
22  **WELLS FARGO BANK, N.A., dba**
    **AMERICA'S SERVICING COMPANY**
23

24

25

26

27

28

PROOF OF SERVICE

1  WRIGHT, FINLAY & ZAK, LLP
2  Robin Prema Wright, Esq., State Bar No. 150984
   T. Robert Finlay, Esq., State Bar No. 167280
3  4665 MacArthur Court, Suite 280
4  Newport Beach, CA 92660 *(Costales/Pleadings/Memo of P&As in Support of Motion to Dismiss Complaint)*
5  Tel. (949) 477-5050; Fax (949) 477-9200
6  rfinlay@wrightlegal.net

7  Attorneys for Defendant, SPECIALIZED LOAN SERVICING, LLC
8  (erroneously sued herein as SPECIALIZED LOAN SERVICES)

9

10              UNITED STATES DISTRICT COURT

11             SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 12  ESTRELLA COSTALES, | ) Case No.: 08 CV 1079-L (JMA) |
| 13                    Plaintiff, | ) **MEMORANDUM OF POINTS AND** |
| 14 | ) **AUTHORITIES IN SUPPORT OF** |
| 15  vs. | ) **MOTION OF DEFENDANT,** |
| | ) **SPECIALIZED LOAN SERVICING,** |
| 16  AMERICA'S SERVICING CO., | ) **LLC, TO DISMISS PLAINTIFF'S** |
| 17  LOAN CENTER OF CALIFORNIA, | ) **COMPLAINT PURSUANT TO** |
| 18  INC., AND SPECIALIZED LOAN | ) **F.R.C.P. 12(b)(6)** |
| SERVICES, | ) |
| 19 | ) Date: October 14 , 2008 |
| 20                    Defendants. | ) Time: 10:30 a.m. |
| 21 | ) Dept.: 14 |
| 22 | ) *[Filed concurrently with Notice of* |
| 23 | ) *Motion and Request for Judicial Notice]* |
| 24 _____ | ) Complaint Filed: June 18, 2008 |

25       Defendant SPECIALIZED LOAN SERVICING, LLC (erroneously sued
26  herein as SPECIALIZED LOAN SERVICES), hereby submits the following
27  Memorandum of Points and Authorities in support of its motion to dismiss
28  Plaintiff's complaint.

1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANT
SPECIALIZED LOAN SERVICING, LLC, TO DISMISS PLAINTIFF'S COMPLAINT

## 1. INTRODUCTION

In her Pro Se Complaint, Plaintiff ESTRELLA COSTALES alleges wrongdoing by the lender at the time she entered into the subject loan agreement. More specifically, Plaintiff alleges that, (1) the lender failed to provide her two copies of the requisite notice of right to rescind (¶13); (2) the disclosure statement provided by the lender violated the requirements of the Truth in Lending Act ("TILA") and "Regulation Z," (12 C.F.R. §226.23) (¶14); and (3) the lender has failed to honor her notice of rescission that is based on the aforementioned violations (¶¶17-20).

Plaintiff's vague allegations fail to state a claim. No cause(s) of action are identified; no specific acts of wrongdoing by each of the named defendants are set forth; no specifics are provided as to why or how the disclosure statement violates TILA; and nor has Plaintiff established the prerequisites to invoke right to rescission.

Quite simply, Plaintiff has not and cannot state a claim against SLS upon which relief may be granted. No facts are pled demonstrating that SLS was in any way involved with this loan transaction, let alone the alleged wrongdoing associated with same. As the concurrently-filed Request for Judicial Notice indisputably shows, SLS was not even the original lender.[1] Moreover, Plaintiff is unable to plead any beneficial interest in the loan acquired by SLS at any time subsequent to the original loan transaction, to show that it is subject to a rescission order.

////
////
////
////

---

[1] The Court may take judicial notice of matters of public record. Intri-Plex Technologies, Inc., vs. Crest Group Inc. (9th Cir. 2007) 499 F.3d 4048, 1052.

1 | Being as these pleading deficiencies cannot be cured, and Plaintiff therefore
2 | cannot in any manner state a claim against SLS, this motion to dismiss should be
3 | granted.[2]

4 | **II.   THE COMPLAINT MUST BE DISMISSED UNDER F.R.C.P.**
5 | **12(b)(6) FOR FAILURE TO STATE A CLAIM UPON WHICH**
6 | **RELIEF MAY BE GRANTED.**

7 | A Rule 12(b)(6) motion is similar to the common law general demurrer, i.e.,
8 | it tests the legal sufficiency of the claim or claims stated in the complaint. The
9 | court must decide whether the facts alleged, if true, would entitle Plaintiff to some
10 | form of legal remedy. Thus, a Rule 12(b)(6) dismissal is proper where there is
11 | either a "lack of cognizable legal theory" or "the absence of sufficient facts alleged
12 | under a cognizable legal theory." Balistreri v. Pacifica Police Dept., 901 F.2d. 696,
13 | 699 (9th Cir. 1990).

14 | Here, Plaintiff's complaint is fatally deficient. It does not identify specific
15 | cause(s) of action, or to which defendant(s) they are directed. It does not discuss
16 | the wrongdoing by each defendant that subjects it to liability. It does not explain
17 | how or why the loan disclosures violate TILA. Finally, it does not allege that
18 | Plaintiff has met any of the requirements necessary to rescind the loan agreement.[3]

19 | Quite simply, Plaintiff has utterly failed to plead facts showing wrongdoing
20 | against her by SLS. This is because she simply cannot make such a showing. As
21 | the documents attached to the Request for Judicial Notice unambiguously confirm,
22 | SLS was not the original lender, and Plaintiff has not and cannot plead any facts
23 | demonstrating that SLS acquired a beneficial interest in the subject loan at any
24 | time subsequent to the original transaction.

25 |
26 |

27 | [2] It is also noted that service of the summons and complaint on SLS was defective. The proof of service merely states that copies were mailed co the corporate office of SLS; neither a corporate officer nor the designated agent for
28 | service of process were served in violation of F.R.C.P. 4(e)(i), 4(f).
[3] For example, a Plaintiff must plead tender of the balance borrowed on the loan in order to obtain rescission. Yamamoto vs. Bank of New York (9th Cir. 2003) 329 F.3d 1167, 1171.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANT
SPECIALIZED LOAN SERVICING, LLC, TO DISMISS PLAINTIFF'S COMPLAINT

1   Finally, Plaintiff's prayer for statutory damages is time barred. Under 15
2   U.S.C. Section 1640(a), a claim for violation of TILA must be brought within one
3   year. This lawsuit was filed more than two years after the subject loan agreement
4   was entered into in March 2006.

5   In closing, Plaintiff's complaint lacks both a "cognizable legal theory" and
6   "sufficient facts" against SLS. It therefore fails to state a claim against SLS upon
7   which relief may be granted.

8   **III.   CONCLUSION**

9   For the foregoing reasons, the Motion to Dismiss of Defendant
10  SPECIALIZED LOAN SERVICING, LLC, should be granted in its entirety.

11                          Respectfully submitted,

12                          WRIGHT, FINLAY & ZAK, LLP

13

14  Dated: July 2/, 2008         By:_____
15                                  Robin Prema Wright, Esq.
16                                  T. Robert Finlay, Esq.,
                                    Attorneys for Defendant SPECIALIZED
17                                  LOAN SERVICING, LLC (erroneously
18                                  sued herein as SPECIALIZED LOAN
                                    SERVICES)
19

20

21

22

23

24

25

26

27

28

1

## PROOF OF SERVICE

2

3    I, Nancy C. Wheeler, declare as follows: I am employed in the County of
Orange, State of California. I am over the age of eighteen (18) and not a party to
4    the within action. My business address is 4665 MacArthur Court, Suite 280,
5    Newport Beach, California 92660. I am readily familiar with the practices of
Wright, Finlay & Zak, LLP, for collection and processing of correspondence for
6    mailing with the United States Postal Service. Such correspondence is deposited
7    with the United States Postal Service the same day in the ordinary course of
business.
8

9    On July 22, 2008, I served the within, **MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANT,**
10   **SPECIALIZED LOAN SERVICING, LLC, TO DISMISS PLAINTIFF'S**
11   **COMPLAINT PURSUANT TO F.R.C.P. 12(b)(6)** on all interested parties in
12   this action as follows:

13   [X]    by placing [ ] the original [X] a true copy thereof enclosed in sealed
14          envelopes addressed as follows:
                        **SEE SERVICE LIST**
15

16   [ X ]  (BY MAIL SERVICE) I placed such envelope(s) for collection to be
17          mailed on this date following ordinary business practices.

18   [    ]  (BY FACSIMILE) The facsimile machine I used, with telephone no. (949)
            477-9200, complied with California Rules of Court, Rule 2003, and no
19          error was reported by the machine.

20   [    ]  By Personal Service, by delivering same to First Legal Support Services for
21          personal service

22   [ X ]  (BY FEDERAL EXPRESS - NEXT DAY DELIVERY) I placed true and
            correct copies of thereof enclosed in a package designated by Federal
23          Express with the delivery fees provided for.

24   [ X ]  (State) I declare under penalty of perjury under the laws of the State of
25          California that the foregoing is true and correct.

26          Executed on July 22, 2008, at Newport Beach, California.

27

28          Nancy C. Wheeler

1
PROOF OF SERVICE

1

## SERVICE LIST

2

3    Estrella Costales
4    12796 Isocoma Street
     San Diego, CA 92129
5    **Plaintiff pro se**

6

7    Suzanne M. Hankins
     Jarlath M. Curran, II
8    SEVERSON & WERSON
9    A Professional Corporation
     The Atrium
10   19100 Von Karman Ave., Suite 700
11   Irvine, CA 92612
12   Telephone (949) 442-7110
     Facsimile (949) 442-7118
13   **Attorneys for Defendant**
14   **WELLS FARGO BANK, N.A., dba**
     **AMERICA'S SERVICING COMPANY**
15

16   Mark D. Lonergan
17   SEVERSON & WERSON
     A Professional Corporation
18   One Embarcadero Center, Suite 2600
19   San Francisco, CA 94111
     Telephone (415) 398-3344
20   Facsimile (415) 956-0439
21   **Attorneys for Defendant**
     **WELLS FARGO BANK, N.A., dba**
22   **AMERICA'S SERVICING COMPANY**
23

24

25

26

27

28

1  WRIGHT, FINLAY & ZAK, LLP
2  Robin Prema Wright, Esq., State Bar No. 150984
   T. Robert Finlay, Esq., State Bar No. 167280
3  4665 MacArthur Court, Suite 280
4  Newport Beach, CA 92660 *(Costales/Pleadgins/Request for Judicial Notice)*
   Tel. (949) 477-5050; Fax (949) 477-9200
5  rfinlay@wrightlegal.net
6
7  Attorneys for Defendant, SPECIALIZED LOAN SERVICING, LLC
   (erroneously sued herein as SPECIALIZED LOAN SERVICES)
8
9              UNITED STATES DISTRICT COURT
10
              SOUTHERN DISTRICT OF CALIFORNIA
11
12 ESTRELLA COSTALES,                 )  Case No.: 08 CV 1079-L (JMZ)
                                      )
13              Plaintiff,            )  **REQUEST FOR JUDICIAL**
                                      )  **NOTICE IN SUPPORT OF**
14                                    )  **MOTION OF DEFENDANT,**
       vs.                            )  **SPECIALIZED LOAN SERVICING,**
15                                    )  **LLC, TO DISMISS PLAINTIFF'S**
16 AMERICA'S SERVICING CO.,           )  **COMPLAINT PURSUANT TO**
   LOAN CENTER OF CALIFORNIA,         )  **F.R.C.P. 12(b)(6)**
17 INC., AND SPECIALIZED LOAN         )
18 SERVICES,                          )
                                      )  Date:  October 14, 2008
19              Defendants.           )  Time:  10:30 a.m.
20                                    )  Dept.:  14
                                      )
21                                    )
22                                    )  *[Filed concurrently with Notice of*
                                      )  *Motion and Memorandum of Points and*
23                                    )  *Authorities]*
24                                    )
                                      )  Complaint Filed: June 18, 2008
25 _____  )
26     Defendant SPECIALIZED LOAN SERVICING, LLC, by and through its
27 attorney of record, hereby requests this Court to take judicial notice pursuant to
28 Federal Rule of Evidence 201 of the following:

                                    1

1        1. The Deed of Trust recorded on March 24, 2006, in the San Diego County

2    Recorder's Office as instrument number 2006-0202966, a true and correct copy of

3    which is attached hereto as Exhibit **"1"**.

4        2. The Deed of Trust recorded on March 24, 2006, in the San Diego County

5    Recorder's Office as instrument number 2006-0202967, a true and correct copy of

6    which is attached hereto as Exhibit **"2"**.

7                      Respectfully submitted,

8                      WRIGHT, FINLAY & ZAK, LLP

9

10   Dated: July 2/, 2008            By: _____

11                     Robin Prema Wright, Esq.

12                     T. Robert Finlay, Esq.,
                       Attorneys for Defendant SPECIALIZED

13                     LOAN SERVICING, LLC (erroneously

14                     sued herein as SPECIALIZED LOAN
                       SERVICES)

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION OF DEFENDANT SPECIALIZED
LOAN SERVICING, LLC, TO DISMISS PLAINTIFF'S COMPLAINT

EXHIBIT "1"

NEW CENTURY TITLE COMPANY

2364214-LS

Recording Requested By:
~~LOAN CENTER OF CALIFORNIA, INC.~~

49

And After Recording Return To:
LOAN CENTER OF CALIFORNIA, INC.
ONE HARBOR CENTER, SUITE 188
SUISUN CITY, CALIFORNIA 94585
Loan Number: 06-30678

DOC # 2006-0202966

MAR 24, 2006    8:00 AM
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
GREGORY J. SMITH, COUNTY RECORDER
FEES:    69.00
PAGES:    21    DA:    1

2006-0202966

——————— [Space Above This Line For Recording Data] ———————

# DEED OF TRUST

**MIN:** 1001906-0000630678-6

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** "**Security Instrument**" means this document, which is dated MARCH 16, 2006 , together with all Riders to this document.
**(B)** "**Borrower**" is ESTRELLA A. COSTALES, AN UNMARRIED WOMAN

Borrower is the trustor under this Security Instrument.
**(C)** "**Lender**" is LOAN CENTER OF CALIFORNIA, INC.

Lender is a CALIFORNIA CORPORATION    organized
and existing under the laws of CALIFORNIA
Lender's address is ONE HARBOR CENTER, SUITE 188, SUISUN CITY, CALIFORNIA 94585

**(D)** "**Trustee**" is NEW CENTURY TITLE COMPANY
3480 VINE ST STE 100, RIVERSIDE, CALIFORNIA 92507

**(E)** "**MERS**" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F)** "**Note**" means the promissory note signed by Borrower and dated MARCH 16, 2006
The Note states that Borrower owes Lender FOUR HUNDRED SEVENTY-TWO THOUSAND FIVE HUNDRED AND 00/100    Dollars (U.S. $ 472,500.00    ) plus interest.

---

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                    Page 1 of 14

DocMagic *e*Formns 800-649-1362
www.docmagic.com

Ca30051.mzd.1.tem

**50**

Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than APRIL 1, 2036

(G)  "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H)  "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I)  "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| ☒ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
|---|---|---|
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ Other(s) [specify] |
| ☐ 1-4 Family Rider | ☐ Biweekly Payment Rider | PREPAYMENT RIDER |

(J)  "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K)  "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L)  "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M)  "Escrow Items" means those items that are described in Section 3.

(N)  "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O)  "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P)  "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q)  "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R)  "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY       of              SAN DIEGO                 :

[Type of Recording Jurisdiction]                          [Name of Recording Jurisdiction]

LOT 90 OF PARK VILLAGE ESTATES UNIT NO. 4, IN THE CITY OF SAN
DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP
THEREOF NO. 10966, FILED IN THE OFFICE OF THE COUNTY RECORDER OF
SAN DIEGO COUNTY, JUNE 12, 1984.
A.P.N.: 315-506-25

which currently has the address of  12796 ISOCOMA STREET
                                                    [Street]

              SAN DIEGO                      , California   92129        ("Property Address"):
                 [City]                                      [Zip Code]

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements,
appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be
covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."
Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security
Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors
and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose
and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling
this Security Instrument.
   BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right
to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.
Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any
encumbrances of record.
   THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with
limited variations by jurisdiction to constitute a uniform security instrument covering real property.

   UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
   1.  Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall
pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late
charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due
under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other
instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid,
Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in
one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check,
treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured
by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
   Payments are deemed received by Lender when received at the location designated in the Note or at such other
location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return
any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender
may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights
hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not

Ca30053.mzd.3.tem

• J •   52

obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.  **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.  **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender

shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.  **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.  **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01
Page 5 of 14

DocMagic ℰℱℴʳᵐˢ 800-649-1362
www.docmagic.com

Ca30055.mzd.5.tem

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These

agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender

specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                    Page 10 of 14                      DocMagic *Romagic 800-649-1362*
www.docmagic.com

Ca3005910.caxd.10.tem

and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The

notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_Estrella A. Costales_ (Seal)
ESTRELLA A.  COSTALES            -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

Witness:                                    Witness:

_____             _____

State of California                           )
                                             ) ss.
County of  SAN DIEGO                          )

On MARCH 19, 2006      before me, DEBORAH S. CHRISTIAN, NOTARY PUBLIC

personally appeared  ESTRELLA A.  COSTALES


~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s)
is/~~are~~ subscribed to the within instrument and acknowledged to me that ~~he/she/they~~ executed the same in ~~his/her/their~~
authorized capacity(~~ies~~), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.


_____
NOTARY SIGNATURE

DEBORAH S CHRISTIAN
(Typed Name of Notary)

[NOTARY SEAL:
DEBORAH S. CHRISTIAN
Comm. # 1594685
NOTARY PUBLIC-CALIFORNIA
Riverside County
My Comm. Exp. July 28, 2009]

NOTARY SEAL

**63**

## GOVERNMENT CODE 27361.7

I CERTIFY UNDER PENALTY OF PERJURY THAT THE NOTARY SEAL
ON THE DOCUMENT TO WHICH THIS STATEMENT IS ATTACHED
READS AS FOLLOWS:

NAME OF NOTARY: _Deborah S. Christian_

COMMISSION NO.: _1594885_

PLACE OF EXECUTION: _Riverside_

DATE COMMISSION EXPIRES: _7-28-2009_

MANUFACTURER/VENDOR NO.: _VS11_

SIGNATURE: _Wuly_          DATE: _3-20-06_

**64**

Loan Number: 06-30678

# PREPAYMENT RIDER
# (SECURITY INSTRUMENT)

This Prepayment Rider is incorporated into and shall be deemed to amend and supplement the Mortgage, Trust Deed, Deed of Trust or Security Deed (the "Security Instrument") of the same date executed by the undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note or Adjustable Rate Note, as applicable (the "Note") payable to   LOAN CENTER OF CALIFORNIA, INC.
("Lender").

   **ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and the Lender further covenant and agree as follows:

Paragraph 1 of the Security Instrument shall be modified by adding the following to the end of Section 1 entitled "Payment of Principal and Interest, Escrow Items, Prepayment Charges and Late Charges":

   Borrower shall have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When Borrower makes a prepayment, Borrower will tell the Lender in writing that Borrower is doing so. Borrower may not designate a payment as a prepayment if Borrower has not made all the monthly payments due under the Note.
   The first   24   months of the loan term is called the "Penalty Period." In any consecutive twelve month period during the Penalty Period, Borrower may prepay up to 20% of the original principal amount of the Note without paying a penalty. If the Borrower makes a prepayment in excess of 20% of the original principal balance within any consecutive twelve month period during the Penalty Period, Borrower will pay a penalty. The penalty will be equal to six (6) months advance interest on the amount prepaid in excess of 20% of the original principal amount of the Note.
   No prepayment penalty will be assessed for any prepayment made after the Penalty Period. Lender will waive the prepayment penalty if (a) the prepayment is concurrent with the sale of the Property, (b) the prepayment is made after the first twelve months of the loan term, and (c) Borrower provides evidence satisfactory to the Lender of such sale. A penalty will be assessed in connection with any prepayment in excess of 20% of the original principal balance made during the first twelve months of the loan term, regardless of whether the Property has been sold.
   The Lender will use prepayments to reduce the amount of principal that is owed under the Note. However, the Lender may apply a prepayment to the accrued and unpaid interest on the prepayment amount, before applying the prepayment to reduce the principal amount of the Note. If Borrower makes a partial prepayment, there will be no changes in the due dates of Borrower's monthly payments unless the Lender agrees in writing to those changes. If the Note provides for periodic increases or decreases in the interest rate and adjustments to the monthly payments, Borrower's partial prepayment may reduce the amount of Borrower's monthly payments after the first payment change date following the partial prepayment. However, any reduction due to Borrower's partial prepayment may be offset by an interest rate increase.
   The Lender's failure to collect a prepayment penalty at the time a prepayment is received shall not be deemed a waiver of such penalty and any such penalty shall be payable upon demand.

*Estrella A. Cristales*

Loan Number:  06-30678

PREPAYMENT RIDER (SECURITY INSTRUMENT)

Page 1 of 2

DocMagic *Romana* 800-649-1362
www.docmagic.com

Uspr11.mnc

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Rider.

_Estrella A. Costales_ (Seal)
ESTRELLA A. COSTALES    -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

Loan Number:

PREPAYMENT RIDER (SECURITY INSTRUMENT)
Page 2 of 2

DocMagic ℯℱᶜᵗᵣₒₙₑₛ 800-649-1362
www.docmagic.com

Uspr22.msc

**66**

MIN: 1001906-0000630678-6                    Loan Number: 06-30678

# ADJUSTABLE RATE RIDER

## (LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 16th day of MARCH, 2006 ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure
Borrower's Adjustable Rate Note (the "Note") to LOAN CENTER OF CALIFORNIA,
INC., A CALIFORNIA CORPORATION
("Lender") of the same date and covering the property described in the Security Instrument and located at:

12796 ISOCOMA STREET, SAN DIEGO, CALIFORNIA 92129

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND
THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

## A.  INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of     7.750 %. The Note provides for changes
in the interest rate and the monthly payments, as follows:

## 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A)    Change Dates
The interest rate I will pay may change on the 1st    day of APRIL, 2008 ,
and on that day every 6th  month thereafter. Each date on which my interest rate could change is called
a "Change Date."
(B)    The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the
average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market
("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first
business day of the month immediately preceding the month in which the Change Date occurs is called the
"Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon
comparable information. The Note Holder will give me notice of this choice.

---

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                    Page 1 of 3

DocMagic €Fermme  800-649-1362
www.docmagic.com

Us3138l.rid.1.tem

• **67**

**(C)   Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding
TWO AND 250/1000                                  percentage points (     2.250   %) to the Current
Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one
percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be
my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to
repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my
new interest rate in substantially equal payments. The result of this calculation will be the new amount of
my monthly payment.

**(D)   Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than
10.750   % or less than      4.750   %. Thereafter, my interest rate will never be increased
or decreased on any single Change Date by more than ONE AND 000/1000
                                                  percentage points (     1.000   %) from the rate of interest
I have been paying for the preceding      6        months. My interest rate will never be greater than
13.750   %.

**(E)   Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new
monthly payment beginning on the first monthly payment date after the Change Date until the amount of my
monthly payment changes again.

**(F)   Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount
of my monthly payment before the effective date of any change. The notice will include information required
by law to be given to me and also the title and telephone number of a person who will answer any question
I may have regarding the notice.

**B.    TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section
18, "Interest in the Property" means any legal or beneficial interest in the Property, including,
but not limited to, those beneficial interests transferred in a bond for deed, contract for deed,
installment sales contract or escrow agreement, the intent of which is the transfer of title by
Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or
if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred)
without Lender's prior written consent, Lender may require immediate payment in full of all
sums secured by this Security Instrument. However, this option shall not be exercised by
Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this
option if: (a) Borrower causes to be submitted to Lender information required by Lender to
evaluate the intended transferee as if a new loan were being made to the transferee; and (b)
Lender reasonably determines that Lender's security will not be impaired by the loan

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                    Page 2 of 3

*DocMagic* ℰℛ*ℴ*ⅆ*ℴ*ⅆ*ℴ*ⅆ 800-649-1362
www.docmagic.com

Us31382.rid.2.tem

assumption and that the risk of a breach of any covenant or agreement in this Security
Instrument is acceptable to Lender.

　　To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a
condition to Lender's consent to the loan assumption. Lender also may require the transferee
to sign an assumption agreement that is acceptable to Lender and that obligates the transferee
to keep all the promises and agreements made in the Note and in this Security Instrument.
Borrower will continue to be obligated under the Note and this Security Instrument unless
Lender releases Borrower in writing.

　　If Lender exercises the option to require immediate payment in full, Lender shall give
Borrower notice of acceleration. The notice shall provide a period of not less than 30 days
from the date the notice is given in accordance with Section 15 within which Borrower must
pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to
the expiration of this period, Lender may invoke any remedies permitted by this Security
Instrument without further notice or demand on Borrower.

　　BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Adjustable Rate Rider.

_Estrella A. Costales_ (Seal)
ESTRELLA A. COSTALES   -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                    Page 3 of 3

DocMagic ℮Ϝℴrms℠ 800-649-1362
www.docmagic.com

Us31383.rid.3.tem

LOT 90 OF PARK VILLAGE ESTATES UNIT NO. 4, IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 10966, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, JUNE 12, 1984.

EXHIBIT "2"

3

NEW CENTURY TITLE COMPANY

2304214-LS

**70**

DOC # 2006-0202967

Recording Requested By:
~~LOAN CENTER OF CALIFORNIA, INC.~~
~~ONE HARBOR CENTER, SUITE 188~~
~~SUISUN CITY, CALIFORNIA 94585~~

MAR 24, 2006     8:00 AM
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
GREGORY J. SMITH, COUNTY RECORDER
FEES:         39.00
PAGES:      11        DA:        1

And After Recording Return To:
LOAN CENTER OF CALIFORNIA, INC.
ONE HARBOR CENTER, SUITE 188
SUISUN CITY, CALIFORNIA 94585
Loan Number: 06-30679

F11
11P

2006-0202967

--- [Space Above This Line For Recording Data] ---

# DEED OF TRUST

MIN: 1001906-0000630679-4

THIS DEED OF TRUST is made this 16th day of MARCH, 2006          among the Trustor,
ESTRELLA A. COSTALES, AN UNMARRIED WOMAN

(herein "Borrower"),

NEW CENTURY TITLE COMPANY, 3480 VINE ST STE 100, RIVERSIDE,
CALIFORNIA 92507                                         (herein "Trustee"),
and the Beneficiary, Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as·
hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of
Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
LOAN CENTER OF CALIFORNIA, INC., A CALIFORNIA CORPORATION
is organized and existing under the laws of   CALIFORNIA                          and has an address of
ONE HARBOR CENTER, SUITE 188, SUISUN CITY, CALIFORNIA 94585

(herein "Lender").

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants
and conveys to Trustee, in trust, with power of sale, the following described property located in the County of
SAN DIEGO          , State of California:
LOT 90 OF PARK VILLAGE ESTATES UNIT NO. 4, IN THE CITY OF SAN
DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO
MAP THEREOF NO. 10966, FILED IN THE OFFICE OF THE COUNTY
RECORDER OF SAN DIEGO COUNTY, JUNE 12, 1984.
A.P.N.: 315-506-25

THIS SECURITY INSTRUMENT IS SUBORDINATE TO AN EXISTING FIRST
LIEN(S) OF RECORD.
which has the address of 12796 ISOCOMA STREET
                                                              [Street]
SAN DIEGO                          , California    92129        (herein "Property Address");
          [City]                                   [Zip Code]

CALIFORNIA-SECOND MORTGAGE-1/80
Form 3805 - AS AMENDED FOR MERS          Page 1 of 7          DocMagic eForms 800-649-1362
                                                              www.docmagic.com

Ca3805l.uzd.1.tem

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are hereinafter referred to as the "Property"; Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Deed of Trust; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or cancelling this Deed of Trust.

TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note dated MARCH 16, 2006        and extensions and renewals thereof(herein "Note"), in the principal sum of ONE HUNDRED FIFTY-EIGHT THOUSAND AND 00/100 Dollars (U.S. $ 158,000.00        ), with interest thereon, providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on APRIL 1, 2036       ; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; and the performance of the covenants and agreements of Borrower herein contained.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional Lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

CALIFORNIA-SECOND MORTGAGE-1/80
Form 3805 - AS AMENDED FOR MERS                    Page 2 of 7                    DocMagic *eFormer* 800-649-1362
                                                                                 www.docmagic.com

Ca38052.umd.2.tem

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

**4. Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

**10. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Deed of Trust shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Deed of Trust. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust and the Note are declared to be severable. As used herein, "costs", "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Deed of Trust at the time of execution or after recordation hereof.

**15. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed of Trust.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**17. Acceleration; Remedies.** Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured

CALIFORNIA-SECOND MORTGAGE-1/80
Form 3805 - AS AMENDED FOR MERS          Page 4 of 7          DocMagic *CFerms* 800-649-1362
www.docmagic.com

Cs38054.actd.4.tem

by this Deed of Trust, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which the Property or some part thereof is located. Lender or Trustee shall mail copies of such notice in the manner prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the lapse of such time as may be required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto.

**18. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to five days before sale of the Property pursuant to the power of sale contained in this Deed of Trust or at any time prior to entry of a judgement enforcing this Deed of Trust if: (a) Borrower pays Lender all sums which would be then due under this Deed of Trust and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

**19. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

**20. Reconveyance.** Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing indebtedness secured by this

CALIFORNIA-SECOND MORTGAGE-1/80
Form 3805 - AS AMENDED FOR MERS                Page 5 of 7                DocMagic *eFGrms* 800-649-1362
                                                                          www.docmagic.com

Ca38655.mrd.5.tem

Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled thereto. Such person or persons shall pay all costs of recordation, if any.

21. **Substitute Trustee.** Lender, at Lender's option, may from time to time appoint a successor trustee to any Trustee appointed hereunder an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county where the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this instrument is recorded and the name and address of the successor trustee. The successor trustee shall, without conveyance of the Property, succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

22. **Request for Notices.** Borrower requests that copies of the notice of default and notice of sale be sent to Borrower's address which is the Property Address. Lender requests that copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust be sent to Lender's address, as set forth on page one of this Deed of Trust, as provided by Section 2924(b) of the Civil Code of California.

23. **Statement of Obligations.** Lender may collect a fee not to exceed $15 for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

24. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☐ Condominium Rider      ☐ Second Home Rider
☐ Balloon Rider      ☐ Planned Unit Development Rider      ☒ Other(s) [specify]
☐ 1-4 Family Rider      ☐ Biweekly Payment Rider      PREPAYMENT RIDER

### REQUEST FOR NOTICE OF DEFAULT
### AND FORECLOSURE UNDER SUPERIOR
### MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action. In accordance with Section 2924B, Civil Code, request is hereby made that a copy of any notice of default and a copy of any notice of sale under the deed of trust (or mortgage) recorded _____, in Book _____,
Page _____, records of _____ County, (or filed for record with recorder's
serial number _____.      County), California, executed by

as trustor (or mortgagor) in which

is named as beneficiary (or mortgagee) and

as trustee be mailed to

at

NOTICE: A copy of any notice of default and of any notice of sale will be sent only to the address contained in this recorded request. If your address changes, a new request must be recorded.

Signature: _____

CALIFORNIA-SECOND MORTGAGE-1/80
Form 3805 - AS AMENDED FOR MERS      Page 6 of 7      DocMagic *eForms* 800-649-1362
www.docmagic.com

Ca38056.mzd.6.tem

IN WITNESS WHEREOF, Borrower has executed and acknowledges receipt of pages 1 through 7 of this Deed of Trust.

_Estrella A. Costales_
ESTRELLA A. COSTALES    -Borrower

_____ -Borrower

_____ -Borrower

_____ -Borrower

_____ -Borrower

_____ -Borrower

State of California
County of SAN DIEGO

On MARCH 19, 2006    before me, DEBORAH S. CHRISTIAN, NOTARY PUBLIC
personally appeared ESTRELLA A. COSTALES

~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature: _____

DEBORAH S. CHRISTIAN
Comm. # 1594885
NOTARY PUBLIC-CALIFORNIA
Riverside County
My Comm. Exp. July 28, 2009

(Seal)

CALIFORNIA-SECOND MORTGAGE-1/80
Form 3805 - AS AMENDED FOR MERS      Page 7 of 7      DocMagic eForms 800-649-1362
www.docmagic.com

Ca3805T.mzd.7.tem

**77**

GOVERNMENT CODE 27361.7

I CERTIFY UNDER PENALTY OF PERJURY THAT THE NOTARY SEAL
ON THE DOCUMENT TO WHICH THIS STATEMENT IS ATTACHED
READS AS FOLLOWS:

NAME OF NOTARY: Deborah S. Christian

COMMISSION NO.: 1594885

PLACE OF EXECUTION: Riverside

DATE COMMISSION EXPIRES: 7-28-2009

MANUFACTURER/VENDOR NO.: VSII

SIGNATURE: Waly        DATE: 3-20-06

**78**

# PREPAYMENT RIDER

Loan No.: 06-30679

Date: MARCH 16, 2006

Borrower(s): ESTRELLA A. COSTALES

FOR VALUE RECEIVED, the undersigned ("Borrower") agree(s) that the following provisions shall be incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed of even date herewith (the "Security Instrument") executed by Borrower, as trustor, in favor of LOAN CENTER OF CALIFORNIA, INC., A CALIFORNIA CORPORATION ("Lender"), as beneficiary. To the extent that the provisions of this Prepayment Rider (the "Rider") are inconsistent with the provisions of the Security Instrument, the provisions of the Rider shall prevail over and shall supersede any such inconsistent provisions of the Security Instrument.

**PREPAYMENT COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:
    I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under the Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.
    If my loan has an adjustable rate feature my partial prepayment may reduce the amount of my monthly payment after the first Change Date following my partial payment. However, any reduction due to my partial prepayment may be offset by an increase in the interest rate.
    If within TWELVE    ( 12    ) months from the date of execution of the Security Instrument I make a full prepayment or, in certain cases a partial prepayment, and the total of such prepayment(s) in any 12-month period exceeds TWENTY PERCENT
                  (      20.000 %)
of the original principal amount of this loan, I will pay a prepayment charge in an amount equal to the payment of SIX    ( 6    ) months' advance interest on the amount by which the total of my prepayment(s) within that 12-month period exceeds TWENTY PERCENT
               (     20.000 %) of the original principal amount
of the loan.

MULTISTATE PREPAYMENT RIDER
09/09/05                Page 1 of 2             DocMagic *eRurms* 800-649-1362
www.docmagic.com

Usprl.gen.1.tem

79

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Rider.

_Estrella A. Costales_ (Seal)
ESTRELLA A. COSTALES    -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

MULTISTATE PREPAYMENT RIDER
09/09/05                        Page 2 of 2                 DocMagic €Forms 800-649-1362
                                                            www.docmagic.com

Usrpr2.gen.2.tem

**EXHIBIT "A"**                                    **80**

LOT 90 OF PARK VILLAGE ESTATES UNIT NO. 4, IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 10966, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, JUNE 12, 1984.

# PROOF OF SERVICE

I, Nancy C. Wheeler, declare as follows: I am employed in the County of Orange, State of California. I am over the age of eighteen (18) and not a party to the within action. My business address is 4665 MacArthur Court, Suite 280, Newport Beach, California 92660. I am readily familiar with the practices of Wright, Finlay & Zak, LLP, for collection and processing of correspondence for mailing with the United States Postal Service. Such correspondence is deposited with the United States Postal Service the same day in the ordinary course of business.

On July 22, 2008, I served the within, **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION OF DEFENDANT, SPECIALIZED LOAN SERVICING, LLC, TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO F.R.C.P. 12(b)(6)** on all interested parties in this action as follows:

[X]    by placing [ ] the original [X] a true copy thereof enclosed in sealed envelopes addressed as follows:
**SEE SERVICE LIST**

[ X ]    (BY MAIL SERVICE) I placed such envelope(s) for collection to be mailed on this date following ordinary business practices.

[    ]    (BY FACSIMILE) The facsimile machine I used, with telephone no. (949) 477-9200, complied with California Rules of Court, Rule 2003, and no error was reported by the machine.

[    ]    By Personal Service, by delivering same to First Legal Support Services for personal service

[ X ]    (BY FEDERAL EXPRESS - NEXT DAY DELIVERY) I placed true and correct copies of thereof enclosed in a package designated by Federal Express with the delivery fees provided for.

[ X ]    (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 22, 2008, at Newport Beach, California.

Nancy C. Wheeler

1

## SERVICE LIST

2

3    Estrella Costales
4    12796 Isocoma Street
5    San Diego, CA 92129
     **Plaintiff pro se**
6

7    Suzanne M. Hankins
     Jarlath M. Curran, II
8    SEVERSON & WERSON
9    A Professional Corporation
     The Atrium
10   19100 Von Karman Ave., Suite 700
11   Irvine, CA 92612
12   Telephone (949) 442-7110
     Facsimile (949) 442-7118
13   **Attorneys for Defendant**
14   **WELLS FARGO BANK, N.A., dba**
     **AMERICA'S SERVICING COMPANY**
15

16   Mark D. Lonergan
17   SEVERSON & WERSON
     A Professional Corporation
18   One Embarcadero Center, Suite 2600
19   San Francisco, CA 94111
20   Telephone (415) 398-3344
     Facsimile (415) 956-0439
21   **Attorneys for Defendant**
22   **WELLS FARGO BANK, N.A., dba**
     **AMERICA'S SERVICING COMPANY**
23

24

25

26

27

28